## STATE v. FRED AHRENS.[1]

December 31, 1927.

No. 26,405.

**Evidence insufficient to sustain verdict against defendant.**
> The evidence considered and *held* insufficient to sustain a verdict against the defendant in a bastardy case.

Bastards, 7 C. J. p. 995 n. 58.

Defendant appealed from an order of the district court for Jackson county, Haycraft, J. denying his motion for a new trial. Reversed.

*Allen & Allen* and *F. B. Kalash,* for appellant.
*B. E. Grottum,* County Attorney, for the state.

STONE, J.

The complaint of the mother of an illegitimate child, that defendant is its father, having been found true by a jury, defendant appeals from the order denying his motion for a new trial.

The complainant, on August 21, 1924, was temporarily employed as a domestic at defendant's farm home to assist while the threshers were there. Her story is that she slept that night in a bedroom on the second floor and that during the night a man joined her in bed and had sexual intercourse with her. There was no protest, no outcry, and no struggle, the witness saying she was too frightened to give any alarm. His purpose accomplished, the girl says the miscreant went downstairs, where she heard him talking, and then, for the first time, identified defendant as her violator. She testifies also that the next morning, in clandestine fashion, he cautioned her not to say anything about what had happened during the night. The child was born May 4, 1925, only 256 days after the date of the alleged intercourse with defendant. The attending physician thought the child was not premature.

[1] Reported in 217 N. W. 118.

Until her pregnancy had gone almost to its fruition, no complaint was made against defendant by complainant or any member of her family. Not only that, but the girl had never suggested to anyone that defendant was the guilty man. Her explanation is that she was still obeying the injunction she claims to have received from defendant to maintain silence and did not know what was the matter anyway, as she was ignorant of the manner in which children are begotten. But even when her child was born, she was unable to tell either the attending nurse or the physician who the father was. The only thing she then seemed sure of was that "it happened over there," meaning while she was at the home of defendant. The doctor's testimony is that "she didn't know who it was." On her own cross-examination, when asked whether she knew during her confinement who the man was, she answered with a flat negative.

Little force can be given the contradictions in the testimony of the prosecutrix, because obviously hers is a case of arrested development, and her mentality of low order, a fact which makes the offense against her all the more serious. But the girl's sad lack of anywhere near an average equipment of perception and comprehension is to be considered in weighing her affirmative evidence against defendant as well as in pondering its negative elements of contradiction and improbability. It is an important circumstance to be considered at length before defendant, who is 29 years old, has always borne a good reputation, is married and has two children, should be branded irretrievably by the conviction which now stands against him. But putting aside that feature of the case, the fact remains that the young lady's story has so much of inherent improbability that, as the record now stands, the burden of proof resting upon the state has not been sustained. Compare State v. McCullough, 102 Minn. 419, 113 N. W. 1059.

The strongest feature of the case against defendant is the testimony that it was he who, the morning after the occurrence, cautioned the girl to say nothing about it. He denies that and every other circumstance indicating his guilt. There is no suggestion that he had made any previous approaches.

If the testimony of complainant be true, defendant left his own marital bed downstairs and, without previous experience assuring him against a repulse that might be noisy, went upstairs to have intercourse with this young girl, then 17 years old; accomplished his purpose in the rather unusual manner already indicated; and then—and now we come to the strangest part of it—immediately returned downstairs and, before resuming his proper place in his own bed, talked loudly enough (with whom does not appear) so that his voice was identified by the complainant in her room upstairs. That story is so improbable that we cannot permit the conviction of defendant to stand, there having been another young man in the house who slept upstairs and who returned to the house sometime during that night.

Order reversed.

WILSON, C. J. (dissenting).

The evidence as it shows in print is not convincing. The jury which heard it was satisfied. The trial judge who heard it and upon whom the responsibility rests in reviewing in the first instance its sufficiency to sustain the verdict, and who has the discretionary right and in some cases the duty of granting a new trial, is content that it stand. I dissent from the majority opinion.

DIBELL, J.

I concur in the views of the Chief Justice.